## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| DMB FINANCIAL, LLC,                          ) | |
|                                              ) | |
|                        Plaintiff,            ) | |
|                                              ) | |
|         v.                                   ) | |
|                                              ) | |
| CONSUMER FINANCIAL PROTECTION       ) | CIVIL ACTION NO. 1:20-CV-12113 |
| BUREAU,                                      ) | |
|                                              ) | |
|                        Defendant.            ) | |
| _____ ) | |

## COMPLAINT

Plaintiff, DMB Financial, LLC, by its attorneys, Burns & Levinson LLP, complaining of

Defendant, Consumer Financial Protection Bureau, alleges as follows:

## INTRODUCTION

1.      DMB Financial, LLC ("DMB") is a debt settlement company that has helped tens

of thousands of people settle their debts, has an A+ rating from the Better Business Bureau

("BBB"), and averages five out of five stars amongst the more than 2,100 reviews on the BBB's

website.  DMB provides a manifestly valuable, and often critical, service for consumers who are

having difficulties paying back their debt, and DMB has been helping such consumers since

2003.

2.      In 2016, the Commonwealth of Massachusetts initiated an investigation against

DMB that was designed to seek retribution for DMB's Chief Operating Officer exercising his

right to appear in front of the State Legislature to oppose legislation the Commonwealth's

Attorney General sought to have enacted. In 2018, the Commonwealth filed an action against

DMB and sought a preliminary injunction with respect to a variety of DMB's practices. After a

full, evidentiary hearing, all of the Commonwealth's 15 prayers for injunctive relief were denied.[1]

3.      The Commonwealth's Attorney General forwarded information that they had been provided by DMB to the Consumer Financial Protection Bureau ("CFPB") and implicitly, if not explicitly, urged it to start its own investigation of DMB. Thereafter, on November 2, 2018, the CFPB served DMB with a Civil Investigative Demand ("CID").

4.      Because the CID was so overbroad and failed to comply with the CFPB's own regulations, DMB's counsel contacted the CFPB to request that it modify the CID to make it reasonable and compliant with the relevant regulations. The CFPB refused to make any modifications, forcing DMB to expend time and money preparing and filing a Petition to Set Aside or Modify the CID. It was only then that the CFPB agreed to submit a revised CID.

5.      Over the next year and one-half, pursuant to multiple CID's, DMB provided the CFPB with thousands of documents and records related to its business and consumers. After almost two years of having to respond to the CFPB's multiple demands, DMB was threatened on Friday, November 20, 2020 with a suit for alleged violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R., Part 310.[2]

6.      Not only are the CFPB's threatened claims unjustified, but they include some of the same claims that were rejected by the Massachusetts Superior Court when it denied the Commonwealth of Massachusetts' Motion for Preliminary injunction.

7.       Thus, DMB brings this action, seeking certain declarations that it is not violating the TSR and/or that the CFPB's threatened claims otherwise have no merit.

---

[1]      The Commonwealth appealed one of those prayers, and DMB eventually assented to that prayer being entered as an Order because the matter had become moot in light of how DMB then was doing business.

## THE PARTIES

8.      DMB is a Massachusetts limited liability company with a principal place of business located at 500 Cummings Center Dr., Suite 3500, Beverly, Massachusetts.

9.      The CFPB is an independent agency of the United States government with its headquarters in Washington D.C.  It was created by Congress and is responsible for, *inter alia*, "regulating the offering and provision of consumer financial products or services under the Federal consumer financial laws."12 U.S.C. § 5491. Among the CFPB's responsibilities, is enforcement of the debt relief service provisions in the TSR.

## JURISDICTION AND VENUE

10.     This court has subject matter jurisdiction over the dispute described in this Complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

11.     Venue is appropriate in the District of Massachusetts pursuant to 28 U.S.C. § 1391(e).

## THE FACTS

12.     DMB is in the debt settlement business, meaning it helps consumers with credit card debt and other unsecured debtors reduce that debt by negotiating on their behalf directly with credit card companies and other unsecured creditors. DMB began in the debt settlement business in 2003.

13.     For debts that DMB agrees to negotiate, the unsecured creditors with whom it deals typically agree to settle all of the consumer's debt if he/she pays 40%-60% of the amount owed in 36-48 monthly installments.  In exchange for this services, DMB sometimes charges a fee of 25% of the debt the consumer asks DMB to negotiate and settle.

---

[2]      The CFPB stated in an e-mail on Tuesday, November 17 that the "Bureau has completed its investigation of DMB and is prepared to bring an enforcement action against DMB," but inquired whether DMB would be

14.     Because the settlements that DMB reach call for consumers to make monthly installment payments, DMB uses information from those consumers to determine how much they can afford to pay on a monthly basis.  This calculation includes factoring in DMB's fee, and all other fees/costs associated with the process.  If DMB does not believe that it will be able to settle a debt at a monthly payment amount that the consumer can afford, DMB will not accept the client (or not agree to negotiate that debt).

15.     After a consumer signs a contract and becomes a client of DMB, a special purpose bank account is set up (the "Settlement Account") with a third party provider, and the consumer begins making monthly payments into that Account.  The Settlement Account is in the consumer's name, the money is his/hers, and the consumer may withdraw the money at any time. The Settlement Account is a non-interest bearing account.

16.     Based on DMB's years of experience, DMB must wait to negotiate with the consumer's (first) creditor until (i) the debt is formally delinquent by either 90 or 120 days (because credit card companies and other unsecured creditors will not negotiate a reduction in the debt until this occurs), and (ii) the consumer has deposited enough money into the Settlement Account so that if s/he continues to make the "Calculated Monthly Payments," the debt (as well as DMB's fees and any other costs of the settlement program) will be paid off on the "Payment Schedule."

17.     As part of the process, DMB informs the consumer what amount it will propose as a settlement to the creditor, or the amount that the creditor has stated it is willing to accept, and the consumer must agree with the proposal before DMB will settle a debt on the consumer's behalf.  As outlined in DMB's contract and as required by the TSR, it only is after (i) DMB reaches a settlement with the consumer's creditor, (ii) the consumer has approved the Settlement,

---

interested in engaging in settlement discussion.

and (iii) the first payment is made to the creditor out of the Settlement Account, that DMB is entitled to be paid its fee.  Notwithstanding the foregoing, DMB routinely (i) defers taking its full fee at that time, (ii) in certain instances actually advances monies for the consumer's benefit, and (iii) ends up writing off thousands of dollars in such advances.

18.     The CFPB is an independent Executive agency within the Federal Reserve System "which shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." 12 U.S.C. § 5491. The CFPB was created by Title X of the Dodd-Frank Act, 12 U.S.C. 53 – Wall Street Reform and Consumer Protection. The purpose of the CFPB is to ensure that the federal consumer financial laws are enforced consistently so that consumers may access markets for financial products, and so that these markets are fair, transparent and competitive. 12 U.S.C. § 5511. The CFPB has the authority to administer, enforce, and otherwise implement federal consumer financial laws, which includes the power to make rules, issue orders, and issue guidance. 12 U.S.C. § 5511. Among its objectives, the CFPB is authorized to exercise its authorities under Federal consumer financial law to ensure that, with respect to consumer financial products, "consumers are protected from unfair, deceptive, or abusive acts and practices . . .." 12 U.S.C. § 5511(b)(2).

19.     The Federal Trade Commission ("FTC") promulgated rules implementing the Telemarketing Act in 1995, which were codified at 16 C.F.R. § 310, called the Telemarketing Sales Rule ("TSR"). The FTC subsequently amended the TSR in 2003, 2008, and 2010.

20.     On information and belief, the CFPB began investigating DMB sometime prior to November of 2018.

21.     On or about November 8, 2018, the CFPB served an overbroad and defective CID on DMB, seeking voluminous information. While DMB objected to the CID and pointed out the

specific deficiencies in it to the CFPB in verbal and written communications, the CFPB refused

to modify the CID. It was not until DMB was forced to incur the time and expense to formally

petition to set aside the CID that the CFPB finally agreed to withdraw the CID and issue a new

one.

22.     DMB has produced thousands of documents and records in response to the CID,

and the CFPB, on information and belief, has gathered additional information about DMB from

other sources.

23.     On November 20, 2020, over two years after it began investigating DMB, the

CFPB threatened to file an action and/or seek injunctive relief for several supposed violations of

the TSR, including claims that:

- Prior to March 2019, DMB failed to disclose to consumers how long it would be before DMB would make settlement offers to creditors;

- Prior to March 2019, DMB failed to disclose to consumers the amount of money or % of debt a consumer would need to set aside before DMB would make settlement offers to creditors;

- DMB collected fees for settling debts where the consumer was not required to make any payment to settle the debt; and

- DMB received settlement fees before consumers had made their first payment to a creditor.

24.     DMB disputes that it has engaged in such conduct, that such conduct violates the

TSR and/or that such conduct would render DMB liable for restitution to consumers. More

specifically, DMB contends that:

- Prior to March 2019, DMB did not violate the TSR by failing to disclose to consumers how long it would be before DMB would make settlement offers to creditors;

- Prior to March 2019, DMB did not violated the TSR by failing to disclose to consumers the amount of money or % of debt a consumer would need to set aside before DMB would make settlement offers to creditors;

- DMB's collection of fees for settling debts where the consumer was not required to make any payment to settle the debt does not violate the TSR, is not a basis for any injunctive relief, and is not grounds to require DMB to reimburse such fees to the consumers who paid them; and

- DMB's receipt of settlement fees before consumers had made their first payment to a creditor caused no harm to any consumer and, therefore, is not grounds to require DMB to reimburse such fees to the consumers who paid them.

## COUNT I
### (Declaratory Judgment)

25.    DMB repeats and incorporates herein by reference the allegations set forth in preceding paragraphs of this Complaint.

26.    A justiciable controversy exists between the parties as to whether DMB has violated the TSR by:

- Prior to March 2019, failing to disclose to consumers how long it would be before DMB would make settlement offers to creditors;

- Prior to March 2019, failing to disclose to consumers the amount of money or % of debt a consumer would need to set aside before DMB would make settlement offers to creditors; and

- Collecting fees for settling debts where the consumer was not required to make any payment to settle those debts.

27.    A justiciable controversy exists between the parties as to whether any fees DMB may have collected prior to consumers making their first payment to a creditor would warrant such fees being refunded to such consumers.

28.    DMB seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and it asks this Court to determine that DMB has not violated the TSR by:

- Prior to March 2019, failing to disclose to consumers how long it would be before DMB would make settlement offers to creditors;

- Prior to March 2019, failing to disclose to consumers the amount of money or % of debt a consumer would need to set aside before DMB would make settlement offers to creditors; and

- Collecting fees for settling debts where the consumer was not required to make any payment to settle those debts.

29.     DMB seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and it asks this Court to determine that DMB should not be enjoined from collecting fees for settling debts where consumers are not required to make any payment to settle those debts.

30.     DMB seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and it asks this Court to determine that DMB should not be required to make restitution to consumers to the extent that DMB took any fee prior to the time that such consumers made their first settlement payment.

**WHEREFORE**, Plaintiff, DMB Financial, LLC prays that this Court:

A.  Enter a judgment in its favor on all claims in this Complaint;

B.  Declare, pursuant to 28 U.S.C. § 2201, that (i) DMB has not violated the TSR by: (a) prior to March 2019, failing to disclose to consumers how long it would be before DMB would make settlement offers to creditors, (b) prior to March 2019, failing to disclose to consumers the amount of money or % of debt a consumer would need to set aside before DMB would make settlement offers to creditors, and (c) collecting fees for settling debts where the consumer was not required to make any payment to settle those debts; (ii) DMB should not be enjoined from collecting fees for settling debts where consumers are not required to make any payment to settle those debts; and (iii) DMB is not required to make restitution to consumers to the extent that DMB took any fee prior to the time that such consumers made their first settlement payment; and

C.  Award DMB Financial, LLC such other and further relief that justice so requires.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action on all issues so triable.

Respectfully submitted,

**DMB FINANCIAL, LLC**
By its attorneys,


_____/s/ Shepard Davidson_____
Shepard Davidson (BBO #557082)
sdavidson@burnslev.com
Gregory S. Paonessa (BBO #691216)
gpaonessa@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
617-345-3000

Dated: November 24, 2020